UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

FEB 0 8 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-99-GWU

ROBERT B. COMBS,                                                    PLAINTIFF,

VS.                                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

### INTRODUCTION

The plaintiff originally brought <u>Combs v. Barnhart</u>, London Civ. Action No. 02-648 (E.D. Ky.) to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After the further administrative reconsideration prompted by the undersigned's Memorandum Opinion, Order and Judgment of January 4, 2004 and after a successful award on a subsequent benefits application, the remaining appeal has been redocketed under the present civil action number and is before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

1

Combs

2.      Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Combs

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

3

Combs

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

4

Combs

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then

5

Combs

an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants

6

Combs

. . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

As noted by the defendant, the issue for review is whether the plaintiff is disabled from the September 14, 2001 alleged onset date (Tr. 171) through October 3, 2002, just prior to the date for which he had been awarded benefits.

For the aforesaid time frame, the administrative law judge (ALJ) specifically addressed the opinion of Dr. Dan Stotingeanu who, as was noted in the text of the opinion specifically stated in late 2002 that there was "no evidence or signs of impairment." (Tr. 195). Relying instead on information from Mark Burns and the

7

medical reviewers (Tr. 197), the ALJ concluded that the plaintiff could return to his past work as a convenience store clerk (Tr. 198) and, thus, was not disabled (Tr. 199).

The plaintiff described the convenience store job as involving medium level lifting, and standing or walking only three hours a day. (Tr. 172, 251). Stooping and reaching were done for one hour a day each, but no comment was made about the need for climbing, kneeling, crouching, crawling and handling big or small objects. (Id.).

The lifting, standing/walking, and stooping duties would seem to be at odds with Dr. Stotingeanu's newest assessment which actually was completed slightly past the critical period (Tr. 269-270). Yet, as the defendant points out, the doctor's concurrent progress notes provide a basis to discount the assessment and create an overall problem with his credibility. The same date this new assessment was signed (Tr. 271), the doctor reported that the patient denied any recent severe flare-ups of his back, and Sotingeanu himself commented that based on physical examination there was "no evidence of signs of impairment." (Tr. 301). His notes show that the plaintiff's chest sounds had been reported as "clear" for that visit and for the previous eight office visits, since January, 2002. (Tr. 301-307). An x-ray of the back ordered that same date showed nothing but a few osteophytes (Tr. 315).

8

Combs

Given these rather glaring factors, the amount of attention paid to these "legal papers" by the doctor (Tr. 301) is open to debate.

The other evidence of record, including a normal physical examination by Mark Burns shortly after the critical period (Tr. 277), the 2001 consultative examination report indicating that the plaintiff would have only mild impairment and that cessation of tobacco should improve his pulmonary symptoms (Tr. 104) and an assessment of the medical reviewer whose residual functional capacity was compatible with the past work (Tr. 285-296) support the administrative decision.

The decision will be affirmed.

This the ___ X ___ day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE

9